Froessel, J.
Plaintiff commenced this action on May 26, 1952 seeking to redress his allegedly wrongful expulsion from membership in the National Maritime Union in May, 1949. The defendants named are said union (hereinafter called N.M.U.) and various officers thereof who are sued as individuals as well. Plaintiff’s prayer for relief seeks, among other things, a declaration that said expulsion was null and void, his reinstatement to union membership and damages for loss of earnings.
Defendants’ answer contains an affirmative defense of a general release in writing as well as general denials. Their motion for summary judgment followed, and in support thereof affidavits were submitted by defendant Stone, treasurer of N.M.U., and by defendants’ attorney, the former affiant also attaching a copy of the release in question.
From the papers before the court, it appeared that plaintiff was expelled at a membership meeting of the union on May 31, 1949, and appeals ultimately reaching the national convention *160 of the N.M.U. resulted in upholding the expulsion on September 18, 1949. Thereafter and on or about April 4, 1950, plaintiff brought suit against defendant Stone to recover wages ($90 per week) plus vacation and severance pay (a total of $495) for the two-week period of July 12-28,1948, allegedly antedating plaintiff’s expulsion. After issue was joined in the Municipal Court by an answer containing a counterclaim for a greater sum ($722.98), the parties’ respective attorneys commenced negotiations resulting in an offer by plaintiff to deliver a release limited to the pending Municipal Court action in return for a proposed settlement. Said offer was rejected by defendant who insisted that only a general release disposing of “ any and all claims this plaintiff could possibly have had ’ ’ would be acceptable. After what plaintiff admits were “protracted negotiations ”, he finally agreed to defendants’ demand, and in or about February, 1952 — only a few months before he commenced the instant action — delivered the usual form general release which was prepared in typewriting by his attorney, and executed and acknowledged by plaintiff. By way of exchange, defendant union executed and delivered to plaintiff a similar release surrendering its claim along with the monetary consideration of $225 mentioned in the release executed by plaintiff.
Plaintiff’s answering affidavit on this motion admits that the aforesaid release executed by him runs to both defendant Stone and N.M.U., but points out that his instant suit is brought against other named defendants “ both in their individual capacities and as officers of the defendant, National Maritime Union ”, and summary judgment should not have been granted against those others not party to the release. Moreover, it is claimed the motion for summary judgment must fail as to all defendants because triable issues are presented. Those alleged issues are said to be whether the parties intended to settle only the pending Municipal Court action or whether plaintiff also intended the release to affect the instant dispute “ involving different issues and different defendants ”.
Nowhere does plaintiff deny that defendants’ counsel demanded a general release and rejected the proffered limited one. In fact, there is somewhat more than an implied admission thereof in plaintiff’s own affidavit, when he states “they demanded a general release ” and speaks of their “ farsightedness ”. However, plaintiff urges that a trial is neces *161 sary, notwithstanding the fact that the release expressly provides that it “ may not he changed orally ”.
Special Term agreed with plaintiff, hut the Appellate Division reversed and granted summary judgment dismissing plaintiff’s complaint. We think the Appellate Division was correct.
There can he no douht that, under the uncontroverted facts submitted here, the release cannot he avoided by plaintiff nor its effect limited by him to the then pending Municipal Court action. The terms contained therein were deliberately bargained for and agreed to in broad, all-inclusive language. They were the result of no mere inadvertence, accident, mutual mistake or fraud hut, on the contrary, followed deliberate, prolonged negotiation between the parties (Unexcelled Laundry System v. Esemann, 273 N. Y. 555; Kirchner v. New Home Sewing Mach. Co., 135 N. Y. 182; cf. Goldsmith v. National Container Corp., 287 N. Y. 438; Farrington v. Harlem Sav. Bank, 280 N. Y. 1, 4; see Senwald Holding Corp. v. Rosoff Subway Constr. Co., 269 N. Y. 211, 213-214, 218; Pimpinello v. Swift & Co., 253 N. Y. 159; see, also, Porter v. Commercial Cas. Ins. Co., 292 N. Y. 176, 181-182, 183). Plaintiff, whose own attorney prepared the release, must therefore he deemed to have assented to and to have freely entered into this agreement. As the general rule applicable here was stated in even broader langmage per Kellogg, J., in the leading, oft-cited Pimpinello case {supra, p. 162): “ Ordinarily, the signer of a deed or other instrument expressive of a jural act, is conclusively hound thereby. That his mind never gave assent to the terms expressed is not material [citing Wigmore on Evidence, § 2415], ”. (See, also, Raleigh Associates v. Henry, 302 N. Y. 467, 473.)
Said release is clearly effective to relieve defendants Stone and N.M.U. from the liability sought in the instant action. By its terms it applies to “ all manner of action * * * causes of action, suits, * * * controversies, * * * claims and demands whatsoever ” which plaintiff “ ever had, now has or which his heirs, executors, or administrators, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever * * * to the day of the date of these presents ”. Such words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually *162 ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies, including his expulsion from the union (cf. Simon v. Simon, 274 App. Div. 447, 450), even though no such litigation had then been instigated (see Kirchner v. New Home Sewing Mach. Co., supra, pp. 187-189) — and notwithstanding plaintiff’s intent to commence a further suit for redress of his prior expulsion (see Porter v. Commercial Cas. Ins. Co., supra, pp. 183-184, and cases there cited). Having released the union from any claim for wrongful expulsion, there can no longer be any duty, continuing or otherwise, to reinstate him.
Under the foregoing principles, it is clear that since the unreformed general release in question, with its express prohibition against any oral change, postdated the circumstances giving rise to both the then pending Municipal Court action and the expulsion here complained of, it clearly operates to defeat the instant action as against defendants Stone and N.M.U., the admitted releasees named therein.
The other defendants in the present suit must also be deemed to have been released. It is well established that the release of one joint tort-feasor releases all of them, absent a reservation to the contrary. “ The law does not permit a double satisfaction for a single injury” (Milks v. McIver, 264 N. Y. 267, 270-271; McNamara v. Eastman Kodak Co., 232 N. Y. 18, 21). Plaintiff’s instant suit, however he may embellish it, speaks fundamentally in tort for the purpose of redressing allegedly wrongful conduct by the named defendants acting in concert through their officerships in the N.M.U., whereby plaintiff was allegedly injured.
A parallel is to be found in the case of Leonard v. Gottlieb (278 App. Div. 786, motion for leave to appeal denied 303 N. Y. 1014). In denying leave there, we agreed that a release executed and delivered by the plaintiff in that action to but one of two defendants, who had conspired to defraud him of his part interest in a corporation and had induced him to sell his stock to one of them, was equally operative as to the other defendant even though plaintiff was unaware of the latter’s role in the conspiracy when he released the first defendant.
The instant case is, if anything, much stronger. Here, after a limited release was refused, plaintiff had prepared and *163 executed a general release to two of the defendants, without any reservations as to the others, on February 21, 1952, two years and some months after he knew (1) that he was expelled at a membership meeting of the N.M.U. on May 31, 1949; (2) that he had completely exhausted his remedies within the union by his appeal to the national convention, which upheld the expulsion on September 18, 1949; (3) that “ each and every member of the [union] directly' or indirectly ratified and approved ’ ’ the expulsion, and (4) that all of the individual defendants participated in the acts complained of. The roles of these defendants in his expulsion were allegedly enacted solely through their offices in the collective association, which association plaintiff expressly released. This clearly distinguishes the case from Simon v. Simon (274 App. Div. 447, 450, supra), where title to the articles involved was not in question and there was no existing dispute. How, then, can it be said that his claim of unlawful expulsion arose after February 21, 1952 the date of his release?
In the face of plaintiff’s admissions in his pleading and opposing affidavit, his argument as to the operation and effect of the general release lacks any 'foundation whatsoever. It is clear that plaintiff’s admissions were made deliberately — to avoid the dismissal of his complaint under our decision in Martin v. Curran (303 N. Y. 276). He cannot have it both ways for the purpose of strategy. When he says that the membership approved the expulsion, we have the right to take his word. If they did, the release operates in favor of all these defendants, and the motion for summary judgment in their favor was properly granted.
Although it is argued that defendants bought their freedom from liability at a modest price— the surrender of defendants ’ claim for $722.98 plus $225 in cash- — it was a bargain to which plaintiff freely and with full knowledge agreed and by which he must now be deemed bound. Otherwise, general releases are not worth the paper they are written on. There, is no triable issue here.
The judgment appealed from should be affirmed, with costs.